■ SUSAN A. PIDWELL, Formerly Known as SUSAN A. DUVALL, Respondent, v KATHRYN DUVALL et al., Defendants, and MCYC, LLC, Appellant. [815 NYS2d 754]—

Cardona, P.J. Appeals (1) from an order of the Supreme Court (Demarest, J.), entered June 22, 2004 in St. Lawrence County, which, inter alia, granted plaintiff's motion for summary judg-

ment, and (2) from an order of said court, entered June 25, 2004 in St. Lawrence County, which, inter alia, appointed a referee.

In 1992, defendant Kathryn Duvall purchased certain commercial waterfront property in St. Lawrence County for $250,000 from Mary Cecilia Briggs and Peter Ward. The purchase was partially financed by the sellers who took back a note and mortgage, dated January 30, 1992, in the amount of $150,000. Among other things, this first mortgage provided that, in the event of a default, the lenders *"may* declare the full amount of the Debt to be due and payable immediately" (emphasis added). Duvall also borrowed $50,000 from the Ogdensburg Growth Fund Development Corporation (hereinafter Ogdensburg), secured by a second note and mortgage, dated January 31, 1992, co-signed by her husband, who is not a party herein. This second mortgage was subordinate to the first. After Duvall failed to make the agreed-upon payments on the first mortgage, the sellers assigned their interest in that mortgage to Barry Hewitt and Gary Gray for $150,701.21 in August 1993. In September 1994, Hewitt and Gray initiated but failed to proceed with a foreclosure action and, thereafter, in April 1997, assigned their interest in the first mortgage to plaintiff, Duvall's daughter, for $45,000. The record indicates that plaintiff borrowed $40,000 of that sum from Gordon Heiss, an acquaintance of her father.[1]

In October 1997, Ogdensburg initiated an action against Duvall to foreclose on the second mortgage. In March 1999, three acquaintances of plaintiff's father, namely, Heiss, defendant Seymour Bronstein[2] and Mahlon Clements, an attorney who represented plaintiff's family at various times, acquired the property at the foreclosure sale under a corporate name, defendant MCYC, LLC (hereinafter defendant). Defendant paid $94,500 and the referee's deed specifically stated that the prop-

---

**1.** According to plaintiff, she acquired the remaining $5,000 from either or both of her parents. It further appears that Heiss brought a separate action against plaintiff concerning the $40,000 loan which was consolidated with the subject foreclosure action in January 2004. Plaintiff claims in her brief that she has since settled all claims made by Heiss.

**2.** The record indicates that, in May 1998, Bronstein lent plaintiff and her father $17,000, which was secured by a promissory note collaterally secured by Bronstein taking a one-fifth interest in plaintiff's assignment of the first mortgage. It appears that no payments were made and, given the lack of objection as to Bronstein's interest, Supreme Court ultimately held in its June 22, 2004 decision that he was properly denominated a plaintiff herein. Nevertheless, it appears that he is currently not a party to this action inasmuch as plaintiff asserts that he released her from all claims by a general release in April 2005.

erty was: "SUBJECT to a first mortgage now held by [plaintiff] by virtue of assignment of note and mortgage dated April 24, 1997."

In June 2000, plaintiff initiated the instant foreclosure action. Following joinder of issue, Supreme Court, by order entered June 22, 2004, granted summary judgment to plaintiff, holding that the mortgage she was foreclosing was valid. The court also directed plaintiff to submit an order of reference, which was signed by the court on June 25, 2004 and entered that day. Subsequently, the court issued a judgment of foreclosure and sale, dated May 2, 2005. Defendant now appeals from the June 22, 2004 order granting plaintiff summary judgment, and from the subsequent order of reference.[3]

Initially, we are unpersuaded by defendant's contention that this action is time-barred pursuant to CPLR 213 (4). Notably, "[t]he [s]tatute of [l]imitations in a mortgage foreclosure action begins to run six years from the due date for each unpaid installment or the time the mortgagee is entitled to demand full payment, or when the mortgage has been accelerated by a demand or an action is brought" (*Saini v Cinelli Enters.*, 289 AD2d 770, 771 [2001], *lv denied* 98 NY2d 602 [2002]). According to defendant, a 1993 letter to Duvall from an attorney representing Briggs and Ward commenced the running of the statute of limitations because it stated that, if Duvall failed to make certain payments in the future, it would "result in the entire balance of said Note and Mortgage being called all due and payable." In our view, Supreme Court correctly held that the letter discussing a possible future event did not constitute an exercise of the first mortgage's optional acceleration clause (*see* 78 NY Jur 2d, Mortgages and Deeds of Trust § 459) and, therefore, the subject action was timely commenced.

Next, we agree with Supreme Court that defendant failed to come forth with sufficient proof as to its defense of fraud to defeat plaintiff's prima facie showing of entitlement to summary judgment (*see* CPLR 3212 [b]; *First Union Natl. Bank v Weston*, 261 AD2d 668, 669 [1999]). Significantly, the most basic element of a cause of action in fraud is proof of a "representation of fact, which is either untrue and known to be untrue or

---

**3.** It appears that the final judgment of foreclosure and sale was stayed pending appeal and an undertaking was filed, however, a notice of appeal was not taken from the May 2005 judgment. Nevertheless, to the extent that the appeals herein can be considered premature, we conclude that any procedural hurdle created as a result is properly resolved by reference to CPLR 5520 (c) (*see Robertson v Greenstein*, 308 AD2d 381, 382 [2003], *lv dismissed* 2 NY3d 759 [2004]; *see also Citibank v Pierre*, 213 AD2d 443 [1995]).

recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury" (*Jo Ann Homes at Bellmore v Dworetz*, 25 NY2d 112, 119 [1969]). Here, in its amended answer, defendant claimed that "the April 24, 1997 assignment of the Note and Mortgage . . . was fraudulent as to this defendant in that the plaintiff was not the true party in interest of the said assignment [and] paid no consideration for the assignment." However, in his affidavit opposing summary judgment, Clements conceded that, in late 1997, plaintiff's father told him "that he put the mortgage assignment in [plaintiff's] name" upon advice of his attorney and it was paid for by money borrowed from a friend. Thus, Clements was clearly aware of the involvement of plaintiff's father with respect to the April 1997 assignment before the March 1999 foreclosure sale, therefore, no misrepresentation is apparent. Furthermore, the conclusory allegation in defendant's answer that plaintiff acquired the April 1997 assignment with the intent "to cut off the equitable title right of this defendant as a subsequent owner of the said real property" is wholly unsupported by this record. Accordingly, defendant's defense of fraud was properly disregarded.

We are similarly unpersuaded with defendant's assertion that Supreme Court erred in failing to grant its request to amend its answer to allege a claim of unconscionable conduct (*see Blueberry Invs. Co. v Ilana Realty*, 184 AD2d 906, 907 [1992]). According to Clements, defendant's members had all been contacted by plaintiff's father about bidding on the property at the foreclosure sale and the three conferred among themselves and decided that: "We were all annoyed that the City had not been more reasonable with [plaintiff's father], so it was decided that we would bid the property in at foreclosure sale, and then [plaintiff's father] would obtain new financing probably in [plaintiff's] name, and we would be reimbursed. We had in mind that he should be able to pay us back and take title to the property in three months." Apparently, the alleged failure of plaintiff's father, a nonparty herein, to fulfill that expectation on the part of defendant is the crux of defendant's claim of unconscionable conduct. In any event, the fact remains that nothing pertaining to any alleged promises involving plaintiff or her family were put in writing and defendant purchased the property at the foreclosure sale for far less than its appraised value with full knowledge that the mortgage note held by plaintiff had priority. Thus, we cannot find that defendant has set forth facts indicating that plaintiff took "an unconscionable advantage" (78 NY Jur 2d, Mortgages and Deeds of Trust § 628).

The remaining arguments raised by defendant have been

examined and found to be either lacking in merit or not properly before this Court.

Crew III, Peters, Rose and Lahtinen, JJ., concur. Ordered that the orders are affirmed, without costs.